Good morning, Your Honors, and may it please the Court. My name is Sabrina Damas, and I represent the petitioner in this matter, Josue Umana-Escobar. I respectfully request to reserve two minutes for rebuttal. Thank you. Your Honors, Respondent has already conceded in one of their 28J letters that the case will need to be remanded under matter of Cruz Valdez to readdress the motion for administrative closure. So I will focus my arguments today on the remaining two issues. And those are the petitioner's asylum withholding and CAT claims and the impact of the putative or incomplete notice to appear that's in the record. Your Honors, we would ask that the petition for review be granted and the case be remanded for two reasons. First, the immigration judge applied the wrong nexus standard to the asylum and withholding of removal claims. And secondly, Your Honors, the Board erred in not recognizing the claims processing error of the incomplete NTA and taking the action of dismissing the proceedings accordingly. Your Honors, with respect to the asylum and withholding claims, the immigration judge in his decision indicated that he did not believe a protected ground was, quote, the reason for the harm that the petitioner experienced. But the reason is neither the correct nexus standard for an asylum claim or for a withholding of removal claim. But didn't the IJ, when you read the IJ's decision as a whole, didn't the IJ make it clear that the question was whether a protected ground would be a reason, even if there might be a stray word in part of the IJ's decision read as a whole? Isn't it clear they're applying the right standard? Your Honor, no, I don't believe it is. For example, there is a part of the judge's analysis in which he begins to say that perhaps it's the family's wealth that is the reason for the harm suffered, but it's equally possible that it is the father's political activities or the kinship ties that the family shares. I would submit that if the judge thinks there's three possible motivations for harm and two of them would be protected grounds, then we have met both the a reason and the one central reason standard. But if I'm looking at page 12, I think, of the IJ's decision, it says the court notes that there is one caveat with that that has now been established, and that is that the nexus for withholding has been clarified to be not a central reason but a reason only, and then quotes Barajas-Romero v. Lynch. So isn't that a correct statement of the law? That is a correct statement of the law, Your Honor. I believe it's page 97, Your Honor. The judge, still in his withholding of removal analysis, concludes that it is not the reason for harm. But on the next page, the IJ says, with regard to withholding, the court relies on the same analysis above but must address whether the protective ground is shown to be a reason for the harm. Your Honor, I would say if the reason was the standard then in the asylum claim, then that's still the wrong nexus standard for asylum because one central reason is a lesser standard than the reason. But, I mean, the IJ is saying on the next page, same analysis, a reason after having seven or eight pages before said the standard is a reason. Your Honor, I do agree with the court that at one point in the decision the a reason standard is cited. I would submit that the analysis, though, and the sort of factual summary and conclusion reached by the judge shows the application of a more strict standard. And I would also point the court to its decision cited by the respondent in their 28th letter, Garcia v. Wilkinson, for why the analysis there is not, is stricter than what a mixed motive analysis calls for under this court's case law. In Garcia, this court noted that when there is, quote, sweeping retaliation towards a family unit over time, that can demonstrate a kind of animus separate from, excuse me, distinct from purely personal retribution. This kind of targeting is sufficient to demonstrate a nexus if the petitioner shows via uncontradicted testimony that persecutors specifically sought out the particular social group of the family. I think you might actually have a different, better argument from Garcia v. Wilkinson, which is that, and I'll be asking your friend about this, about whether the BIA applied the wrong standard of review with regard to nexus and didn't review de novo but instead reviewed for clear error because there's a statement in Wilkinson said that our cases can be read for that proposition. And I think there's a lot of support for that. Your Honor, that is another one of the arguments that we put forth in our opening brief. And I would agree with you that the Board clearly did. I mean, they used, I believe, the words clear error in their decision. I don't think there's a question that clear error reviews. If we agree with you about that, wouldn't we have to remand for the right analysis by the BIA under the right standard? And so this issue of what the IJ said would sort of wash out because the BIA would review it again? Yes, I think that's correct, Your Honor,  they would then need to go review whether the IJ himself also applied the wrong standard of review as part of their de novo review. Does that answer your question, Your Honor? Yes, because I wasn't sure why we would talk about, in our decision, anything about what the IJ said if we needed to vacate anyway because of what the BIA applied as a standard. I agree with you, Your Honor. If you find the BIA applied the wrong standard of review, then whether the judge applied the wrong standard of review is something for the Board to discuss on remand. Your Honors, the other issue that's outstanding before the Court is the issue of the notice to appear. And I do recognize that at the Board level, this was briefed as a jurisdictional issue, which is clearly precluded by subsequent case law. You never used the words claim processing, right? Correct, Your Honor, we did not. However, I would point the Court's attention to the Seventh Circuit's decision in Ortiz-Santiago. In that case, the parties actually used jurisdiction all the way up through the Circuit Court briefing before the Court. And the Seventh Circuit said it wasn't bound by the parties' phrasing of the issue. So let's say we were willing to assume for the sake of argument that you had appropriately raised it before the BIA. Why don't you just lose anyway because you just waited too long to raise it? If it's a claim processing rule and you never objected before the IJ, why doesn't that just end that discussion even if you did exhaust it before the BIA? Your Honor, I don't believe this Court has specifically had the opportunity to opine on what is a timely claims processing objection. And I do know that the Seventh Circuit, as Your Honor I think has hinted at, has said it needs to be before the IJ, and certainly the Board in matter of Fernandez wants to put it even earlier by the time of pleadings. Neither of those timelines seems to really take into account what the purpose of the claims processing rule is. In this case, Your Honor, I see it from two perspectives. The purpose of the claims processing rule for the NTA is at the earliest possible time to give the petitioner, or the respondent as they're called in immigration court at that point, knowledge of when their hearing is coming so that they can be prepared for that first hearing. Of course, if you go the matter of Fernandez way and you let the government try to correct an NTA after the first hearing, you've defeated that entire purpose. But secondly, if the idea is that a timely objection has to be raised at a point in which the overseeing body, the agency in this case, can take whatever corrective action is appropriate, whether that is dismissal of proceedings or, as the Board would like, to allow Homeland Security to correct the NTA, then I don't see any reason that can occur at the Board of Immigration Appeals level. The Board has the same inherent authority to dismiss proceedings as an immigration judge. The Department of Homeland Security has the same authority, if it's applicable, which I don't think it is, but for argument's sake, to file an I-261, some sort of amendment to the NTA, and seek remand from the Board while it's still before the agency. So I think my answer to your question, Your Honor, is that I don't think the Seventh Circuit and the Board have drawn the timeline at the right place, and I would ask this Court to draw the timeline for a timely objection at any point while the case is before the agency. Should there be a prejudice requirement, though? I don't see what the prejudice here is from this claims processing error. Your Honor, the Seventh Circuit has taken the position that you don't need to show prejudice if there is a timely objection to a claims processing rule violation, and I think some of that is just the idea that claims processing rules are supposed to be about orderly processing of civil claims, and not necessarily about whether a party is prejudiced by disorderly processing of a civil claim, if you will. I'm sorry. Sorry. If the objection is raised, though, after all the IJ proceedings are done, but actually all the way through the IJ proceedings the petitioner or respondent was showing up to all the hearings and there doesn't seem to be any effect, how does it make sense to vacate at that point? Your Honor, respectfully, I really think this is a problem of the government's making, right? I mean, the Department of Homeland Security drafts that it was just to appear, they have been for literally decades deciding to simply leave a very crucial part of this blank, and if the outcome of that is it's now all caught up with them and the agencies are going to have to deal with dismissing large-scale proceedings because Homeland Security didn't do what they were supposed to do, that's their fault. Well, I mean, but to follow up on what Judge Freeland said, assuming we were going to reach this issue in this case, I mean, in almost every area of the law, it is not what the Supreme Court at one time referred to as the fox hunt theory of justice. It's you have to show that you have been harmed, and it's not a gotcha thing. You left something out, but I wasn't harmed. And it's hard for me to say I understand what the Seventh Circuit said, but it's hard for me to see why in a case like this we would adopt a rule that says, gotcha, it doesn't matter whether there's harm. Your Honor, the only answer I have for you is more of a policy one than a legal one, which is to simply hold the government accountable for doing what is clearly required by statute and regulation. And so far, the attempts by the agency to otherwise address this issue haven't held them accountable because we're continuing to see these problems in agency proceedings. Your Honors, I see I'm well over my time. Do the panel have any other questions for me? No, but we'll give you some time for rebuttal. Thank you, Your Honor. Counselor? I'm sorry I picked up so much time, and I don't want to hurt the Petitioner's argument. So I'm going to move on. Okay. We've got plenty of time. I am delighted to answer all the questions that I have. Yeah, we'll give you some time to come back up. Let's hear from Counsel for the Attorney General. Good morning, Your Honors, and may it please the Court. My name is Krishna Patel, and I represent the United States Attorney General. The record in this case simply does not have enough evidence to support the fact that the Petitioner established an axis here between persecution and any protected ground. The current standard of review here for this Court is substantial evidence, and the Board did not err in applying clear error to a factual question. Okay, but, you know, you're familiar, I don't think anybody cited this in the briefs, but are you familiar with the August 2002 DOJ guidance? Which specific guidance? Well, and it says, the immigration judge's determination of whether these facts demonstrate harm that rises to the level of persecution and whether the harm inflicted was on account of a protected ground are questions that will not be limited by the clearly erroneous standards. So the DOJ guidance from 2002 said just what Petitioner here is saying, and we recognized in Garcia v. Wilkinson that that might well be what our cases say. So why shouldn't we hold the BIA applied the wrong standard of review and send it back with the rest of what we're already sending back? Sure, Your Honor. Well, motive, as the Supreme Court noted in U.S.A., which is the case that we had cited in response to the brief, motive is a question of fact. Whether an event occurs and why motivated that event is a quintessential factual question, and a factual question is something that is determined by the agency and subject to clear error review, and before this Court, substantial error review. And in Elias Zacharias, once again, the Supreme Court found that Petitioner has a burden of presenting evidence of motive, and that motive should be reviewed for substantial evidence, which is reserved for factual questions. Now, I think you discussed in your brief the matter of SEG, right? Yes, Your Honor. And the matter of SEG, I mean, I understand it's 2008, but it says the exact opposite, right? Well, it's in a footnote, and respectfully, Your Honor, we consider it dicta, and it also relies on cases that were subsequently overruled, and the Board later issued decisions, which is the matter of NM, where it explicitly recognized Nexus as a factual issue. Are you familiar with the relatively recent unpublished Tenth Circuit case where the Tenth Circuit disagrees with your view about whether the overruling undercut SEG? Sorry, Your Honor, I'm not familiar. No, that's fine. Go ahead. Okay. In terms of the Nexus here, as going to the imputed political opinion, the Petitioner here simply hasn't presented enough evidence to compel a finding that his persecutors would impute any political opinion onto him or harm him on that basis. All he points to is the fact that his father was harmed and his brother was harmed. But if we were to determine that the BIA did, I mean, I understand your contrary view, but if we were to determine that the BIA applied the wrong standard of review, we couldn't reach that question. The government would agree with that, right? Yes, Your Honor. It would have to be revanded for the correct standard of review. However, here the facts simply aren't enough to meet the Petitioner's burden of proof. That's what this case comes down to is burden of proof, and he doesn't present any evidence of motive here, whether direct or circumstantial. For example, in Naranjo Garcia v. Wilkinson, the Petitioner presented circumstantial evidence, such as the timing between the threats she had from the cartels and the harms that her companion members experienced. In the case of the Petitioner's wife, Salgado Sosa, from the Court Circuit, that Petitioner also presented some evidence in terms of an affidavit from a neighbor that indicated that gangs in that situation had threatened him in the immediate aftermath of his stepfather refusing to comply with their demands. In the Petitioner, they're testified to the same effect, that the gangs threatened him after his stepfather acted against the gangs' wishes. But here the Petitioner doesn't give us any direct or circumstantial evidence to support a finding that he would be harmed or, to that extent, that his family's harms are relevant, that they were harmed on account of either political opinion, imputed political opinion, or their family ties. Counsel, turning for a minute to the NTA issue, does the government think this is the right case for us to decide in a presidential opinion whether the Seventh Circuit is right, that you don't need to show prejudice for a defective NTA? Especially, Your Honor, no. This is a case where the Petitioner did not bring up the claims processing rule arguments before the agency. Even if we can assume that those arguments are related to the jurisdictional argument, the record just hasn't been developed in terms of the claim processing argument. And the Respondent would suggest that even if there is a violation of the claims processing rule, a hearing wasn't made in a timely manner. It was made well after the proceedings were already over, well after the Petitioner already attended every hearing before the Immigration Judge, and he doesn't deny receiving a notice of hearing that provides the information that he was missing from the original notice of hearing. Counsel, on the NTA issue, returning to the nexus issue, the Petitioner relies on the threat that his mother received, and that's this whole piece of evidence that his whole family would be targeted, and there is some harm on account of family ties, but that threat here doesn't give us evidence of motive, and the Court's decision in Garcia-Millan is instructive here, where the Petitioner's persecutors referenced her ex-husband, they referenced his affiliation with a political group, but the Court found that the evidence in the record, based on that single statement, wasn't enough to compel the finding that the family tie, or that political affiliation was in any way related to the persecution. And so similarly here, the Petitioner simply doesn't meet this burden. I'm sorry, can I bring you back to the NTA issue for a second? In terms of exhausting or raising this claim, the Petitioner at least raised it jurisdictionally before the CIA, right? So it is before the agency in some form that the NTA is defective. Why isn't that raising it? Well, Your Honor, that argument focused on whether there was subject matter jurisdiction, and that argument cited two relevant cases for subject matter jurisdiction, but it didn't address the subsequent argument, and it didn't develop the argument of whether prejudice should be required, for instance, in showing that an incomplete NTA, where the person later attended all hearings, should show that he was prejudiced by the lack of information on the NTA. And so simply showing that there was a reference to jurisdiction made before the agency doesn't really follow through to the rest of the arguments that the Petitioner is now speaking to. It seems like one question that's potentially open, though, right now, that might need to be resolved is how does someone exhaust an NTA defect issue, and whether calling it jurisdiction is enough to alert the agency to the defect, even if it is claims processing, not jurisdiction. Well, Your Honor, the Petitioner would simply have to object at some point before the immigration judge or thinks that that line should be at the pleading stage, that there is a problem in the charging document, the charging document that, in fact, has the allegations of applicability that the Petitioner is pleading to, where the Petitioner concedes service of the NTA and doesn't deny receiving subsequent notice of hearing. I don't think that there are grounds there to challenge the sufficiency of process or the orderly civil proceedings that have happened there. Moving to the Catt claim, that is a concern before the Court here, that, again, the Petitioner doesn't provide enough evidence to compel a finding that public officials would be involved in or acquiesce to his torture when returned to El Salvador. He relies on his belief that a mayor may have been involved in his father's murder, but, again, there is insufficient evidence to support that claim. Where do police later investigate it? And for this Court's holdings, police investigations and a failure to apprehend someone isn't in itself, and a failure to prevent crime isn't in itself evidence of complicity or acquiescence. If there are no further questions, we will conclude there. Okay. Very good. Thank you for your argument. Let's put two minutes on the clock for a vote. Your Honors, just one quick point related to the Catt claim. The Respondent keeps saying that it's his belief, right, and I think the IJ used that language as well, that it was the Petitioner's belief that the mayor was involved in the murder of his father. But that is not what the record shows. We have a judge who found his testimony credible, and his testimony was that the law enforcement investigation into his father's murder concluded that the mayor sent the gang members to murder his father. And I think I don't see how you find a mayor sending gang members to be anything less than government acquiescence to torture, to be quite honest, if not direct involvement by a government official in torture. So that's one factual point that I think needs to be considered for the Catt. With respect to the asylum claim, Your Honors, and I recognize that, as we've noted, if the Board used the wrong standard, then this is sort of a moot argument, but it is not simply the phone call to the mother that is the evidence of family-related persecution here. It is, in fact, the timing of repeated acts of violence by gang members against the family, the murder of the father, the attempted murder against the brother, which law enforcement concluded that the gang members who tried to murder the brother believed that the petitioner, his nephew, and his mother were in the car with the brother, which would then show that, in fact, the gang members were attempting to kill the entire family. And then the phone call to the mother saying, we're going to kill your entire family just the way we did your husband. So I think, again, returning to the decision in Garcia, it's true. We don't and we rarely do in an asylum claim having gang members saying, we're trying to kill you all because you're related to each other. But that is very strong circumstantial evidence when you have repeated and… A very deferential standard of review. Yes, Your Honor. But I think, given the decision in Garcia, even under a very deferential review, when you have that many acts targeting a family unit, you have sufficient circumstantial evidence that family ties are at least a reason for the harm suffered under withholding. If the Court has no other questions. No, we don't. Thanks very much for your argument. Thank you, Your Honor. Please just argue to submit it, and we are sure to do as such to the Court. All rise. This Court, for this session, stands adjourned.
judges: WATFORD, FRIEDLAND, BENNETT